IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TRAVIS WILLIAM ALLEN,<br><br>               Plaintiff,<br><br>vs.<br><br>RJC INVESTMENT, INC.,<br><br>               Defendant. | CV 17-166-BLG-TJC<br><br>**ORDER** |

Travis William Allen ("Allen") brought this action under the Truth in Lending Act seeking an offset in debt and an award of finance charges and fees he paid under a contract and security agreement with Defendant RJC Investment, Inc. ("RJC"). (Doc.1.) Allen also seeks a declaratory judgment that RJC cannot judicially enforce the contract because RJC violated the Montana Mortgage Act's licensing requirements. (Doc. 1.) RJC has filed a counterclaim against Allen, seeking damages for breach of contract and attorney's fees. (Doc. 6.)

Pending is Allen's motion for summary judgment as to all counts in his complaint. (Docs. 19.) The motion is fully briefed and ripe for decision. Having considered the parties' arguments and for the following reasons, the Court orders that Plaintiffs' motion is **GRANTED** in part and **DENIED** in part.

///

1

## I. BACKGROUND

On June 21, 2013, Allen entered into an installment sale contract and security agreement with Cherry Creek Development, Inc. for the purchase of a mobile home. (Doc. 24 at ¶1.) Allen also executed a promissory note to pay Cherry Creek $69,900 in accordance with the terms of the contract. (Doc. 1-2.) Cherry Creek subsequently assigned its interest in the contract and promissory note to RJC. (Doc. 24 at ¶¶ 3, 4.) Allen's monthly payment obligation under the contract was $711.00. (Doc. 14-2.) The contract also provided that a late fee of $50.00 would be assessed on any payment made five days past the due date. (Docs. 14-2, 24 at ¶ 5.) After executing the contract, Allen defaulted on his payment obligations multiple times. (Doc. 24 at ¶6.) As a result, he was charged numerous late fees in the amount of $50.00 each. (Docs. 20-1, 24 at ¶ 6.)

On December 22, 2017, Allen brought this action against RJC asserting violations of the Truth in Lending Act ("TIL Act"). (Doc. 1.) He claims RJC violated the TIL Act by assessing premature and excessive late fees under the contract (Count I), and by failing to make required disclosures when the contract was executed (Count II). Allen also alleges the contract is not enforceable because RJC was not a licensed lender as required by the Montana Mortgage Act (Count III). Allen requests that the Court grant him recovery of all finance charges and fees paid on the contract, declare that he may offset any amount owed to RJC by

the statutory damages limit of $4,000, and declare the contract judicially unenforceable. (Doc. 1 at 6.)

RJC filed its answer and counterclaim against Allen on February 26, 2018. (Doc. 5.) RJC denies Allen's allegations in its answer, and asserts three causes of actions against him in a counterclaim: breach of contract, breach of the implied covenant of good faith and fair dealing, and attorney's fees. *Id.* RJC also raises a variety of affirmative defenses. *Id.*

On August 10, 2018, Allen filed a motion for summary judgment. (Doc. 17, 19.). Allen does not specify in his motion the claim(s) on which summary judgment is sought, but generally "moves the Court . . . to enter summary judgment in this matter." (Doc. 17.) Fed. R. Civ. P. 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Nevertheless, the Court will construe the motion as a requesting summary judgment as to all counts in Allen's complaint.

## II. LEGAL STANDARD

### A. Summary Judgment

A court will grant summary judgment if the movant can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden to

submit evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Material facts are those which may affect the outcome of the case. *Anderson*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id*. If the movant meets its initial responsibility, the burden shifts to the nonmoving party to establish a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### B. Truth in Lending Act

Congress enacted the TIL Act to promote and achieve "the informed use of credit," which "results from an awareness of the costs thereof by consumers." 15 U.S.C. § 1601. It encourages fair and transparent credit extension practices by requiring credit term disclosures and prohibiting lending abuses. *Eby v. Reb Realty, Inc.*, 495 F.2d 646, 647 (9th Cir. 1974); 15 U.S.C. § 1601(a). Courts should liberally construe the Act in favor of consumers to implement its purpose. *In re Ramsey v. Vista Mortgage Group*, 176 B.R. 183, 187 (9th Cir. 1994) (citing *Eby*, 495 F.2d at 650).

Although it was enacted in 1968, the TIL Act has been amended multiple times. *In re Ramsey*, 176 B.R. at 186. Many of the modifications to the application of the Act are reflected in "Regulation Z" and the Home Ownership

4

and Equity Protection Act[1] ("HOEPA"). 12 C.F.R. Pt. 226; 15 U.S.C. § 1639. HOEPA amended the TIL Act to require additional disclosures for certain high-cost mortgages. 15 U.S.C. § 1639. Regulation Z was promulgated by the Board of Governors of the Federal Reserve System, the entity charged with prescribing regulations to implement the TIL Act. *In re Ramsey*, 176 B.R. at 186; 15 U.S.C. § 1604. The Board also published Official Staff Commentary to supplement Regulation Z and aid in its interpretation. *Id.* The Supreme Court has instructed courts to analyze truth in lending issues under the TIL Act with deference to Regulation Z and the Official Commentary. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980).

## III. DISCUSSION

### A. Count I: Did RJC charge premature and excessive late fees?

In Count I of his complaint, Allen asserts that RJC charged premature and excessive late fees. Under the TIL Act, a creditor may not charge a late fee in connection with a "high-cost mortgage" in excess of 4 percent of the amount past due unless specifically authorized in the loan documents. 15 U.S.C. § 1639(k)(1)(A)-(B). Further, a late fee cannot be imposed "before the end of the 15-day period beginning on the date the payment is due." 15 U.S.C. §

---

[1] For simplicity, the Court's reference to the "TIL Act" throughout this Order includes HOEPA and Regulation Z.

1639(k)(1)(C); *See also* 12 C.F.R. § 1026.34(8). For mortgages greater than $50,000, a high cost mortgage is a consumer credit transaction secured by the debtor's principal dwelling that has an annual percentage rate exceeding the average prime offer rate by more than 6.5%. 15 U.S.C. § 1602 (bb)(1)(A); 12 C.F.R. § 1026.32. A creditor who fails to comply with these requirements is liable to the consumer for "the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material." 15 U.S.C. §1640(a)(4).

RJC does not challenge the applicability of these provisions to the contract, or that the late fee provisions in the contract violate Section 1639. Instead, it disputes whether its failure to comply with the requirements is material. (Doc. 23 at 6.) RJC argues the late fees were not material to Allen's decision to execute the contract because he was able to afford the charges, he did not object to the late fees, and he paid each late fee in full. *Id.* at 8. Allen disagrees with RJC's characterization of what constitutes material noncompliance. (Doc. 35 at 1.) He claims that materiality does not concern whether the late charges impacted his decision to execute the contract. *Id.* Instead, he argues, the question is whether RJC violated a material provision of the TIL Act. *Id.*

Congress incorporated a materiality defense into § 1640(a)(4) to prevent the penalization of "inadvertent violations where the error was based on a simple

6

miscalculation or other mistake where the creditor maintained procedures to catch errors." *In re Bryce*, 491 B.R. 157, 177 (W.D. Wash. 2013) (citing H.R. Conf. Rep. No. 103-652 (1994). "The Conferees intend that miscalculations, computer malfunctions, and printing mistakes shall not be deemed material if the creditor maintained reasonable procedures to prevent such mistakes." In determining whether a creditor's failure to abide by the statute's prohibitions was material, "the Court can be guided by caselaw interpreting the bona fide error defense codified in 15 U.S.C. § 1640(c)." *In re Bryce*, 491 B.R. at 178. The Ninth Circuit has recognized that "clerical errors [] are the only violations [the bona fide error defense] was designed to excuse." *Palmer v. Wilson*, 502 F.2d 860, 861 (9th Cir. 1974).

Here, RJC does not contend that it charged late fees in violation of the TIL Act because of a clerical mistake, but rather that its violation is immaterial because Allen was able to afford the fees and dutifully paid them. RJC's argument is contrary to the purpose of the TIL Act. It would relieve a creditor from the consequences of violating the Act with the simple assertion that the debtor can afford the unlawful credit terms. Not surprisingly, RJC provides no authority supporting that position.

RJC has otherwise failed to provide evidence that its assessment of late fees was not material as contemplated by the Act. Instead, the contract and payment

7

history submitted to the Court show the opposite; the late fee amount and accrual date "were part of [RJC's] usual credit practice and did not occur in spite of procedures designed to avoid unintentional violations of the Act." *Palmer*, 502 F.2d at 861; (Docs. 14-2, 20-1, 24 at ¶ 6.) Because RJC does not contest the fact that it charged late fees in violation of 15 U.S.C. § 1639(k), and fails to raise a genuine issue of material fact as to the materiality of its violation, Allen is entitled to summary judgment on his claim that RJC violated the TIL Act by charging premature and excessive late fees as alleged in Count I of his complaint.

Nevertheless, Allen has not established the absence of genuine issues of fact as to the damages recoverable for the violation. The parties stipulated to the payments Allen has made under the contract at the time of the preliminary pretrial conference. (Doc. 14-1.) Allen subsequently filed an affidavit, however, in which he asserts that the stipulated payment history is incomplete. (Doc. 20.) But he did not include any factual allegations regarding the payment history, or the late fees and interest paid under the contract, in his Statement of Undisputed Facts, as required by L.R. 56.1(a). (Doc. 18.) Consequently, RJC did not address that payment history in its Statement of Disputed Facts under L.R. 56.1(b). (Doc. 24.) In addition, neither party has addressed the legal issue of the statutory damages which are recoverable for a violation of the Act. Therefore, at this time the Court

can only enter partial summary judgment as to RJC's liability for violation of the TIL Act, without a determination of the damages recoverable for the violation.

### B. Count II: Did RJC fail to make required truth-in-lending disclosures?

The TIL Act's foundation is grounded on the disclosure of credit costs and terms. 15 U.S.C. § 1601.[2] The disclosure requirements vary based on the characteristics of each credit transaction. Closed-end credit transactions, like the transaction at issue here, must adhere to the specific disclosure requirements set forth in the TIL Act and Regulation Z. 15 U.S.C. §1638, 12 C.F.R. § 226.18. A creditor who fails to adhere to these requirements may be liable to the debtor for damages. 15 U.S.C. § 1640.

In Count II of his Complaint, Allen contends that RJC failed to make several disclosures required by the TIL Act. (Doc. 19 at 4-5.) In response, RJC states that it "disputes the claims that it failed to make adequate disclosures," but provides no support for that assertion. Instead, RJC contends that Allen's disclosure claim is barred by the Act's statute of limitations.

---

[2] "It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uniformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."

Allen's disclosure claims must be brought "within one year from the date of occurrence of the violation." 15 U.S.C § 1640(e). The Ninth Circuit has held that the limitations period begins to run "at the consummation of the transaction." *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir.1986). Here, the parties consummated the transaction on June 21, 2013, when the contract was executed. (Docs. 14-1, 34 at ¶1.) Allen brought this lawsuit over four years later on December 22, 2017. (Doc. 1.)

Allen contends the limitations period has not run, however, because he "may still raise the claim as a setoff to amounts owed the creditor," citing 15 U.S.C. § 1640(h). But § 1640(h) is not a statute of limitations provision. It makes clear that a "person may not take any action to offset any amount" due to a creditor "unless the amount of the creditor's or assignee's liability under this subchapter has been determined by judgment of a court of competent jurisdiction . . . ." 15 U.S.C. § 1640(h). It further provides, however, that the "subsection does not bar a consumer then in default on the obligation from asserting a violation of this subchapter in an original action or as a defense or counterclaim" to a collection action. *Id.* Thus, this subsection provides the circumstances under which a debtor may assert an offset for violation of the Act. But it does not provide, as Allen suggests, for an extension of the statute of limitations to affirmatively assert such a claim.

Nevertheless, the Act's limitations provision may provide an avenue for Allen to assert a violation of the disclosure requirements as a defense. The statute of limitations for a disclosure claim is set forth in § 1640(e), and it provides that the one-year limitations period "does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation *as a matter of defense* by recoupment or set-off in such action, except as otherwise provided by State law." 15 U.S.C. § 1640(e) (emphasis added).

Therefore, Allen may still assert the violation of the TIL Act's disclosure requirements as a defense to RJC's action to collect on the debt, unless otherwise provided by Montana law. But here, Allen is not asserting his claim to recoupment or set-off as a matter of defense; he has asserted the claim affirmatively in his complaint and seeks summary judgment on that claim. Neither party has moved for summary judgment on RJC's counterclaim to collect amounts due on the contract. Therefore, RJC's counterclaim, and any defenses Allen may have to the claim by recoupment or set-off, are not properly before the Court.

Accordingly, Allen's Motion for Summary Judgment as to Count II of his complaint is denied. Allen may be able to defensively assert his nondisclosure claim if it is properly raised as a defense to RJC's collection action, to the extent it is permitted by Montana law.

## C. Count III: Is RJC barred from judicially enforcing the contract?

In Count III of his complaint, Allen requests a declaratory judgment that RJC cannot judicially enforce the sales contract because RJC violated the Montana Mortgage Act ("MMA"). Under the MMA, "a person may not regularly engage in the business of a mortgage broker, mortgage lender, mortgage services, or mortgage loan originator with respect to any residential mortgage loan unless licensed or registered under the provisions of this part through the [Nationwide Mortgage Licensing System]." Mont. Code Ann. § 32-9-102.

Allen argues RJC is not licensed as required by the MMA, and asserts that this renders the contract unenforceable. (Doc. 19 at 6-8.) In response, RJC argues Allen's request should be denied because the MMA does not provide for a private right of action, and in the alternative, a dispute of material fact exists as to whether RJC "regularly engages" in the lending business. (Doc. 23 at 13.) Allen concedes that the language of the MMA does not grant of a private right of action. (Doc. 25 at 5.) He nonetheless asks this Court to find that a private cause of action exists under the MMA because "the Act was intended to protect consumers". *Id.*

Where a statute does not create an explicit private cause of action, the existence of an implied cause of action is a matter of statutory construction. *Faust v. Utility Solutions, LLC*, 173 P.3d 1183, 1187. The Court considers four factors in determining whether a private cause of action should be recognized: (1)

consistency within the statute as a whole; (2) the intent of the legislature considering the statute's plain language; (3) the avoidance of absurd results; and (4) any construction of the statute by the agency charged with its administration. *Id.* (citing *Montana Power Co. v. Cremer*, 596 P.2d 483, 485 (1979)). The Court will also examine the legislative history to determine whether the legislature intended to create a private right of action. *Id.*

Considering the MMA as a whole, and interpreting its plain language, there is no indication that the legislature intended to create a private right of action to enforce its provisions. The MMA specifically grants the Montana Department of Administration with authority to implement and enforce the Act's provisions. § 32-9-130. The Act establishes the relevant licensing requirements, and grants the Department the authority to deny, suspend, or revoke a license. *See e.g.,* §§ 32-9-112, 32-9-122, 32-9-120, 32-9-126. The Department is also given the authority to investigate violations of the Act, to hold hearings on alleged violations, and has the authority to issue subpoenas for the attendance of witnesses and the production of documents. § 32-9-141. In its enforcement role, the Department may impose civil penalties, order restitution, seek injunctions, and issue cease and desist orders. §§ 32-9-133, 32-9-132, 32-9-142. The MMA does contemplate the involvement of other entities in its enforcement. For example, the Department may "refer any matter to the appropriate law enforcement agency for prosecution of a violation of

this part, and is authorized to "regularly report violations. . . and enforcement actions to the [National Mortgage Licensing System]." § 32-9-130 (8)(a)(iii), (9)(d). But none of these provisions imply the creation of a private right of action allowing an individual to enforce the MMA.

The MMA's legislative history also does not support a finding that the legislature intended to create a private right of action. The MMA was enacted in 2003 with the purpose of establishing a licensing system for mortgage brokers and loan originators in an effort "to promote honesty, education, and professionalism." 2003 Mont. Laws Ch. 516 (S.B. 402.) Implementation of the licensing scheme and utilization of the Act's enforcement mechanisms were specifically delegated to the Department. *Id.* at § 19 ("The department shall adopt rules to carry out the intent and purposes of [sections 1 through 22]. The rules adopted are binding on all licensees and enforceable through the power of suspension or revocation of licenses.") In short, there is nothing in the legislative history to indicate any other entity or individual was intended to enforce the MMA.

Therefore, considering the statutory scheme as a whole, together with the plain language and the legislative history of the MMA, it is evident that the legislature designated the Department as the sole entity responsible for the Act's enforcement. Allen has not provided the Court with any evidence or argument to the contrary. Implying a private right of action would be contrary to the

legislature's intended enforcement scheme, and interfere with the Department's authority to determine whether a violation of the Act occurred, and what penalties and sanctions may be appropriate. Summary judgment as to Plaintiff's claim in Count III of his complaint is therefore denied.

### D. The Sufficiency of RJC's Affirmative Defenses

Although the issue is not included by Allen as one of the issues presented for determination (Doc. 19 at 2), and has not otherwise been raised by motion, Allen also argues in his brief that all of the affirmative defenses set forth in RJC's answer should be stricken. Allen invites the Court to "dispense with a detailed analysis of each [] defense alleged and summarily reject the affirmative defenses" as not adequately pled under the *Iqbal* and *Twombly* pleading requirements. (Doc. 19 at 10.) The Court declines to do so.

First, Allen has not discussed any of the affirmative defenses individually, and has provided no analysis or argument as to what facts must be alleged to properly support any of the defenses alleged. More importantly, however, while there have been federal district court cases which have applied the *Twombly/Iqbal* pleading standard to affirmative defenses, no court in the District of Montana has done so. *See, Clintron v. Title Financial Corp.*, 2018 WL 692936 *2 (D. Mont. February 1, 2018). In *Clintron*, Chief Judge Christensen found that without clear authority from the Ninth Circuit, the sufficiency of affirmative defenses should be

15

evaluated under the "fair notice" pleading standard. *Id.* The Court finds the reasoning in *Clintron* persuasive. Allen does not maintain that any of the affirmative defenses in RJC's answer are deficient under the fair notice standard. Therefore, to the extent he moves the Court to "summarily reject" and strike all of RJC's affirmative defenses, the motion is denied.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Allen's Motion for Summary Judgment (Doc. 17) as to Count I of his complaint is **GRANTED** in part;

2. Allen's Motion for Summary Judgment (Doc. 17) as to Counts II and III of his complaint is **DENIED**;

3. To the extent Allen moves to strike all of RJC's affirmative defenses, the motion is **DENIED**.

   **IT IS ORDERED.**

DATED this 19th day of March, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge